UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
STEVEN KLEINBART and SARAH
KLEINBART,

                      Plaintiffs,                      **REPORT AND RECOMMENDATION**
                                                                          21 CV 2169 (EK)(LB)

   -against-

NEW YORK CITY, NEW YORK
ADMINISTRATION FOR CHILDREN'S
SERVICES, DAVID A. HANSELL,
AMANDA G. KATZ, DR. RIVKA Y. STEIN,
DAVID and JENNIFER STEINBERG, HON.
BEN DARVIL, JR., OTHEL CHILDREN'S
HOME & FAMILY SERVICES, MALKIE
BOBKER, OHEL, JOHN DOES #1-25, JANE
DOES #1-25, and ABS Entities #1-25

                    Defendants.
-----------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

        Plaintiffs Steven and Sarah Kleinbart[1] bring this fee-paid *pro se* action alleging defendants violated their civil rights under 42 U.S.C. §1983 and 42 U.S.C. §1985, provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961-1968, and state law. Plaintiffs seek damages, declaratory, and injunctive relief. Defendants move to dismiss plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.

        The Honorable Eric R. Komitee referred defendants' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is

---

[1] The Court previously warned plaintiffs that they cannot pursue this action on behalf of their minor daughter. Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59 (2d Cir. 1990). ECF No. 19. Steven and Sarah Kleinbart are the only plaintiffs herein, and any claims purportedly brought on behalf of their minor daughter must be dismissed without prejudice.

1

respectfully recommended that defendants' motions should be granted, and plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

The following facts are drawn from allegations in plaintiffs' Amended Complaint. ECF No. 29. Plaintiffs, who are Orthodox Jews, struggled with H.K.'s medical condition from birth. ¶¶ 3, 21. In February 2015, a feeding tube was inserted in H.K. ¶¶ 21-27. On April 30, 2015, a woman who knew plaintiffs called the New York Administration for Children's Services ("ACS") and informed ACS that plaintiffs were neglecting their daughter's education. ¶ 28. The same woman phoned Dr. Rivka Stein, plaintiffs' daughter's pediatrician at that time, to report that plaintiffs were unfit parents. ¶ 31. Over the next five months, ACS began to look in on plaintiffs and to meet with them. ¶ 34.

Toward the end of December 2015, plaintiffs' daughter became ill, and Dr. Stein instructed plaintiffs to take her to the hospital. ¶ 38. Plaintiffs' daughter was taken to Columbia Hospital and treated for dehydration with intravenous fluid. ¶ 43. While at the hospital, Dr. Jocelyn Brown, a licensed physician at the hospital who was in contract with ACS, examined plaintiffs' daughter. ¶¶ 53-55. Dr. Brown contacted the State Central Registry to report her belief that plaintiff Sarah Kleinbart was abusing H.K. ¶ 56.

On January 8, 2016, ACS assigned a caseworker to investigate the abuse accusation against plaintiffs. ¶ 58. That same day, the caseworker contacted a Rabbi engaged by ACS, who was asked to assist the agency to encourage plaintiffs to voluntarily surrender their daughter to ACS. ¶¶ 59-61. Plaintiffs refused to do so. ¶ 62.

Following H.K.'s hospitalization, ACS visited and inspected plaintiffs' home. ¶ 74. On February 9, 2017, plaintiffs' daughter contracted pneumonia and was hospitalized. ¶¶ 89-103. On February 28, 2017, ACS summoned plaintiffs to Family Court, claiming plaintiffs had fabricated H.K.'s pneumonia diagnosis. ¶ 104. Defendant Ben Darvil Jr., a New York State Family Court Judge, appointed Sarah Kleinbart's father as guardian for H.K. ¶ 106. Judge Darvil also ordered plaintiffs to follow Dr. Stein's orders regarding their daughter's medical care. ¶ 109.

On March 15, 2017, Dr. Stein informed the Family Court that plaintiffs' daughter's feeding tube was unnecessary. ¶ 125. Plaintiffs had the feeding tube removed by Dr. Stylianos, but Dr. Stein told ACS that plaintiff Sarah Kleinbart had removed the feeding tube without her permission. ¶¶ 128-133. On June 12, 2017, plaintiffs requested that Judge Darvil remove Dr. Stein as their daughter's pediatrician. ¶ 137. The request was granted. Id. Plaintiffs and Judge Darvil chose Dr. Robert Kadar as their daughter's new pediatrician. Id.

On September 1, 2018, plaintiffs moved with their daughter from Brooklyn, New York to Monsey, New York in Rockland County. ¶ 152. Plaintiffs allege that ACS "fabricated a claim" that plaintiffs were not permitted to move their daughter to Rockland County. ¶ 161. On October 15, 2018, ACS took H.K. from the Kleinbarts on Judge Darvil's order. ¶¶ 164, 168. Plaintiffs' daughter was taken to an ACS center in Manhattan. ¶ 173.

On October 17, 2018, the Family Court requested a list of family members with whom plaintiffs' daughter could be placed. ¶ 177. However, while plaintiffs were compiling a list, Judge Darvil informed plaintiffs that their daughter was being placed with defendants David[2] and Jennifer Steinberg. Id. A few weeks later, David and Jennifer Steinberg obtained orders of

---

[2] David Steinberg is plaintiff Steven Kleinbart's first cousin. ECF 29. ¶ 15.

3

protection against plaintiffs. ¶ 184. On October 19, 2018, plaintiffs met with defendant Ohel Children's Home and Family Services ("Ohel") and were informed by defendants Amanda Katz and Jennifer Steinberg that Ohel would oversee their daughter's foster care. ¶ 189.

After an April 22, 2019, Passover visit for plaintiffs and their daughter, ACS suspended all contact between plaintiff Sarah Kleinbart and her daughter, telling plaintiffs they were not permitted to speak Yiddish. ¶¶ 209-210. At a hearing on August 9, 2019, the Court prohibited plaintiffs from speaking or writing about their daughter. ¶ 219.

The Court takes judicial notice that on March 25, 2020, the Family Court suspended plaintiffs' visits with H.K. ECF No. 37-2, ¶ 11. On May 10, 2021, Judge Darvil issued a decision and order finding that plaintiffs had neglected their daughter H.K.; plaintiffs' application for the return of custody pursuant to Family Court Act § 1028 was denied. Id. ¶ 14. On May 12, 2021, H.K. was placed in ACS custody. Id. ¶ 15. The Family Court scheduled a Permanency Hearing to determine whether plaintiffs' daughter should remain in foster care for November 16, 2021; that hearing was adjourned to February 15, 2022. Id. ¶ 16. Another permanency hearing is scheduled for August 9, 2022.[3]

**PROCEDURAL HISTORY**

Plaintiffs commenced this *pro se* action in the Southern District of New York on April 14, 2021, on behalf of themselves and H.K., their minor daughter. ECF No. 1. The case was transferred to the Eastern District on April 20, 2022,[4] and summonses were issued May 14, 2022. ECF No. 8. By Order dated July 1, 2021, the Court informed plaintiffs that they could not

---

[3] New York State Unified Court System, https://ww2.nycourts.gov/courts/7jd/courts/family/index.shtml (visited May 17, 2022) (verified by court clerk).
[4] Plaintiffs contest the transfer of the case to the Eastern District, alleging bias. ECF No. 29 ¶ 5.

4

represent their daughter in this action and that in order to pursue H.K.'s claims they must retain an attorney to represent H.K. ECF No. 19.

Defendants[5] requested a premotion conference to move to dismiss the complaint, ECF Nos. 20, 21, 24, which was held on November 3, 2021. At the conference, the Court granted plaintiffs' request to file an amended complaint. ECF No. 27. Plaintiffs filed their Amended Complaint on December 1, 2021. ECF No. 29. Defendants, David A. Hansell, Amanda G. Katz, New York Administration for Children's Services, New York City (collectively "the City defendants"); Malkie Bobker, David and Jennifer Steinberg, Ohel Children's Home & Family Services (collectively "the Ohel defendants");[6] Ben Darvil, and Rivka Stein; all filed their instant motions to dismiss, ECF Nos. 35, 36, 37, 39, 52; plaintiffs opposed defendants' motions to dismiss, ECF No. 49; and defendants have replied. ECF Nos. 50, 51, 57, 59.

## DISCUSSION

Plaintiffs' Amended Complaint asserts fifteen claims against defendants, including civil rights claims under §1983 and §1985, as well as claims under RICO and state law. Plaintiffs allege that defendants conspired to remove plaintiffs' daughter H.K. from their custody and to place her with defendants David and Jennifer Steinberg as part of a scheme to profit from the Title IV-E federal funding program.

### I. Standard of Review

The standards for a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are

---

[5] Malkie Bobker, David and Jennifer Steinberg, Ohel Children's Home & Family Services, Ben Darvil, David A. Hansell, Amanda G. Katz, New York Administration for Children's Services, and New York City.

[6] The Ohel defendants served their motion to dismiss on plaintiffs and filed proof of service on the docket. ECF No. 36. Defendants fully briefed motion was filed March 24, 2022, pursuant to Judge Komitee's Individual Practices and Rules. ECF No. 52.

substantively identical. Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). However, on a motion to dismiss under 12(b)(1), the party invoking the court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)); McCray v. Lee, No. 16 CV 1730, 2017 WL 2275024, at *2 (S.D.N.Y. May 23, 2017).[7] A case must be dismissed for lack of subject matter jurisdiction when the Court "lacks the statutory or constitutional power to adjudicate it." Makarova, 201 F.3d at 113 (citing (Fed. R. Civ. P. 12(b)(1)). A plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)).

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); In re NYSE Specialists Sec. Litig., 503 F.3d 89, 91 (2d Cir. 2007); Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d. Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, federal courts may take judicial notice of state court decisions. See Rates Tech. Inc. v. Speakeasy, Inc., 685 F.3d 163, 166 n.3 (2d Cir. 2012) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir.2006) ("a court may take judicial notice of documents filed in other courts… to establish the fact of such litigation and related filings")).

---

[7] The Clerk of Court is directed to send plaintiff the attached copies of all the unreported cases cited herein.

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," or "speculative," Twombly, 550 U.S. at 555; he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556)). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570. When a plaintiff proceeds *pro se*, the Court has an obligation to "liberally construe" the complaint. Erickson v. Pardus, 55 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Estelle, 429 U.S. at 106).

## II.   Abstention from Subject Matter Jurisdiction

### A. Younger Abstention

The Court understands that plaintiffs are frustrated with the Family Court process and sympathizes with plaintiffs' separation from their child. However, plaintiffs cannot obtain the remedies they seek in federal court. The custody case in the Family Court regarding plaintiffs' daughter is ongoing, and plaintiffs will have the right to appeal the state court decision to the Appellate Division. See Fam. Ct. At § 1112. This Court is unable to grant plaintiffs the relief they request and must abstain from hearing this case.

Younger abstention prevents the Court from granting the injunctive relief sought by plaintiffs. Under the Younger abstention doctrine, initially articulated in Younger v. Harris, 401 U.S. 37 (1971), federal courts are forbidden from enjoining ongoing state proceedings. Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 100 (2d Cir. 2004); Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court has clarified the three

7

circumstances in which courts should abstain under Younger: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-7 (2013); Schorr v. DoPico, 686 F. App'x 34, 36 (2d Cir. 2017) (summary order). A "state-initiated proceeding to gain custody of children allegedly abused by their parents" falls within the second category. Sprint, 571 U.S. at 79 (citing Moore v. Sims, 442 U.S. 415, 419-420 (1979)).

The Court considers three additional factors before applying Younger abstention: whether, "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Spargo, 351 F.3d at 75; Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty., 805 F. 3d 425, 427 (2d Cir. 2015); see Lowell v. Vermont Dep't of Child. & Fams., 835 F. App'x 637, 639 (2d Cir. 2020), as amended (Dec. 15, 2020) (summary order) ("after applying the categorical Sprint approach, this court will consider three additional, non-dispositive factors to determine whether abstention is appropriate").

These three conditions are met in this case. The Family Court proceeding regarding the custody of plaintiffs' daughter is ongoing.[8] Although plaintiffs' Amended Complaint requests injunctive relief, the state court has not yet held the final permanency hearing required by New York Family Court Act § 1089(a). ECF No. 37-2, ¶ 16. Furthermore, it is well settled that child

---

[8] When defendants filed their motions to dismiss on January 6, 2022, the permanency hearing was scheduled for February 15, 2022. Another permanency hearing is scheduled for August 9, 2022. New York State Unified Court System, https://ww2.nycourts.gov/courts/7jd/courts/family/index.shtml (visited May 17, 2022) (verified by court clerk).

8

custody is an important state interest. Neustein v. Orbach, 732 F. Supp. 333, 341 (E.D.N.Y. 1990) ("it hardly bears repeating that state courts have a paramount if not exclusive interest in child custody cases"). Finally, Younger abstention "rests foursquare on the notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.' Diamond "D" Const. Corp., 282 F.3d, 191, 198 (2d Cir. 2002) (quoting Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994)). State courts are "fully competent to decide federal constitutional questions," Neustein, 732 F. Supp. at 342, and "nothing precludes [plaintiffs] from raising these claims in a state appellate court." McKnight v. Middleton, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010), aff'd, 434 F. App'x 23 (2d Cir. 2011). Plaintiffs have the right to appeal from the state court judgments in this matter. Fam. Ct. At § 1112 (appeals from an intermediate or final order in a case involving abuse or neglect may be taken as of right).

Plaintiffs' Amended Complaint asks the Court to enjoin the Family Court and to order the immediate return of their daughter. See e.g., ECF No. 29 ¶ 381. Plaintiffs request this relief with respect to each and every claim brought in the Amended Complaint. ECF No. 29 ¶¶ 381, 385, 387, 407, 437, 464, 472, 481, 504, 521, 529, 534, 538, 546. Such relief is prohibited by the Younger abstention doctrine.

Although the Supreme Court has recognized a narrow, bad faith exception to Younger abstention, Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982), plaintiffs have not pled facts to support an exception here. As long as a state court proceeding is legitimate in its purpose, even if it is unconstitutional in execution, the bad faith exception will not apply. Sobel v. Prudenti, 25 F. Supp. 3d 340, 356 (E.D.N.Y. 2014). "To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Id. Although plaintiffs state

9

that defendants acted in bad faith and with the intent to harass, ECF No. 29 ¶ 356, they allege no facts showing the state proceeding was initiated to harass plaintiffs. On the contrary, plaintiffs' Amended Complaint acknowledges that the ACS abuse investigation began as the result of third-party complaints. Id. ¶¶ 28, 31, 38. Thus, the Court is prohibited from granting plaintiffs relief and should abstain from hearing plaintiffs' claims.

   B. Rooker-Feldman Doctrine

Even if the state proceeding had concluded, and Younger abstention no longer applied, this Court would lack subject matter jurisdiction over this matter under the Rooker-Feldman doctrine. This doctrine arises from two cases, Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923) and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983), which establish "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state courts." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The Supreme Court's decision in Exxon Mobile v. Saudi Basic Indus. Corp., narrowed application of Rooker-Feldman to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005).

Four elements must be met for Rooker-Feldman to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced."

Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (quoting Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d. Cir 2005)); Shung Cho v. City of New York, 910 F.3d 639, 645

10

(2d Cir. 2018). These four elements are met in this case. Plaintiffs challenge several of Judge Darvil's orders, including those "prohibiting Plaintiffs from seeing their daughter," denying "even electronic communications with their daughter," and placing the child in temporary custody with ACS. ECF No. 29 ¶¶ 164, 374. See J.R. ex rel. Blanchard v. City of New York, No. 11-CV-841, 2012 WL 5932816, at *4 (E.D.N.Y. Nov. 27, 2012) (finding plaintiff "lost in state court when the family court issued its order of disposition remanding custody of [the child] to ACS"). Those state court dispositions were entered before plaintiffs commenced the instant proceeding.

Plaintiffs also allege those state court orders caused their injuries as a result of their separation from their daughter. See e.g., ECF No. 29 ¶ 267 ("the separation has caused both the Plaintiffs… great anxiety, distress, emotional pain, suffering and monetary loss."). Plaintiffs' claims are not independent of the state court dispositions as the injuries plaintiffs identify are the result of the decisions in the custody proceeding. See Blanchard, 2012 WL 5932816 at *8; see also, Hoblock, 422 F.3d at 88 ("a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state court judgment"). Plaintiffs invite this Court to review and reject the state court judgments and allege that the state court orders were illegal and based on insufficient evidence. ECF No. 29 ¶ 165 (asserting plaintiffs' daughter "was taken… into ACS custody by an illegal Court Order"). Moreover, the relief plaintiffs seek is for the Court to return custody of their daughter. In order for plaintiffs to recover, the Court must "essentially reject the family court's order authorizing removal." Blanchard, 2012 WL 5932816 at *8. For all of these reasons this Court lacks subject matter jurisdiction over plaintiffs' claims under the Rooker-Feldman doctrine.

C. Domestic Relations Abstention

The Court is further counseled to abstain from hearing this case because of the nature of plaintiffs' claims: domestic relations is "an area of law that federal courts and Congress leave almost exclusively to state law and state courts." Khalid v. Sessions, 904 F.3d 129, 133 (2d Cir. 2018); see Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (while rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts" (internal citation omitted)); see also Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990) ("federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field"). This Court's consistent refusal to intervene in child custody cases, "is supported by the Supreme Court's longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.'" Deem v. DiMella-Deem, 941 F.3d 618, 624 (2d Cir. 2019) (quoting In re Burrus, 136 U.S. 586, 593–94 (1890)). "Accordingly, to the extent that Plaintiff challenges the child custody results of the Family Court proceedings, this Court is without jurisdiction to review such matters." Washington v. Williams, No. 19-CV-00289, 2019 WL 1876787, at *2 (E.D.N.Y. Apr. 26, 2019) (the Court lacks subject matter jurisdiction over plaintiff's claims that the state court judge violated her rights during custody and neglect proceedings).

Plaintiffs assert that "this action is based primarily on the claim that their minor child was seized without justification." ECF No. 29 ¶ 2. "If the Court were to consider this [claim], it would have to wade into a domestic dispute and review state court custody determinations – a

12

role that is wholly inappropriate for a federal court." Brown v. City of New York, No. 19-CV-108, 2019 WL 235642, at *2 (E.D.N.Y. Jan. 16, 2019); ECF No. 49-1 at 1. As plaintiffs' claims involve a child custody dispute, defendants' motions to dismiss this action for lack of subject matter jurisdiction should be granted.

All three doctrines examined above prohibit this Court from hearing plaintiffs' claims. Federal courts must "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings," Diamond "D" Const. Corp., 282 F.3d at 198, and "only the U.S. Supreme Court—and not lower federal courts—may review and reject state-court decisions under 28 U.S.C. § 1257." Green, 585 F.3d at 102–03 (internal quotations omitted). Plaintiffs ask the Court to intercede in "a matter rightfully reserved for state courts," McKnight, 699 F. Supp. 2d at 520, when nothing precludes plaintiffs from appealing the decisions they challenge in state court. Fam. Ct. At § 1112 (appeals from an intermediate or final order in a case involving abuse or neglect may be taken as of right). "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

D. Judicial Immunity

Even if the Court could exercise subject matter jurisdiction over plaintiffs' claims, the claims against defendant Darvil would be dismissed as Judges are entitled to absolute immunity in the exercise of their judicial function. Mireles v. Waco, 502 U.S. 9, 11 (1991). Because Judge Darvil acted in his judicial capacity at all times applicable to this case, he is absolutely immune from plaintiffs' suit for damages. Pappas v. Lorintz, 832 F. App'x 8, 12 (2d Cir. 2020) (summary order), cert. denied, 141 S. Ct. 2628 (2021).

Plaintiffs argue that Judge Darvil acted "in the absence of all jurisdiction," and is therefore not immune from suit. ECF No 29. ¶ 16. While a judge "will be denied immunity for damages when he [] acts in the clear absence of all jurisdiction," Tucker v. Outwater, 118 F.3d 930, 936 (2d Cir. 1997), contrary to plaintiffs' conclusory allegation, Judge Darvil's actions were all taken in a child custody proceeding in his role as a judge in Family Court. Thus, Judge Darvil is entitled to judicial immunity in this case. Brady v. Ostrager, 834 F. App'x 616, 618 (2d Cir. 2020) (summary order) (finding judicial immunity applied to the adjudication of a lawsuit in a court which had jurisdiction over the lawsuit when plaintiff alleged the judge ignored evidence and conspired with others).

### III.   Dismissal for Failure to State a Claim

Finally, even if plaintiffs' claims were not barred by the lack of subject matter jurisdiction or by abstention, defendants' motions to dismiss would be granted for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs one-hundred-and-thirty-seven-page complaint asserts fifteen counts against the ten named defendants alleging they violated plaintiffs' federal constitutional rights through their involvement in the state court custody proceedings. Although plaintiffs provide the Court with a lengthy recitation of the events leading to their daughter's placement in foster care, plaintiffs fail to tie these facts to the elements of their claims against defendants.

Claims under 42 U.S.C. § 1983 must allege the deprivation of constitutional rights by state actors. McKnight, 699 F. Supp. 2d at 530. Plaintiffs bring numerous claims under §1983 (Counts I – IV, VI) for violations of their constitutional rights, under the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments.

To establish a constitutional violation under §1983, "a plaintiff must show that: (1) the defendant acted under color of state law; and (2) the defendant's actions resulted in a deprivation of plaintiff's constitutional rights." Bhatia v. Yale Sch. of Med., 347 F. App'x 663, 664–65 (2d Cir. 2009) (summary order). "Private parties are generally not amenable to suit under §1983, because they are not state actors, although they may be liable where … they are 'jointly engaged with state officials' in a conspiracy to deprive the plaintiff of his constitutional rights." Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). Moreover, to hold a municipal entity liable under § 1983, a plaintiff must show that a policy or custom of the municipality caused the injury. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978); Friedman v. New York City Admin. for Children's Servs., 502 F. App'x 23, 27 (2d Cir. 2012).

Plaintiffs bring claims against state, municipal, and private actors. Plaintiffs allege that all defendants worked together and conspired to deprive them of their rights. See ECF No. 29 ¶¶ 243-267. As a threshold matter, plaintiffs do not allege a municipal policy or custom apart from the alleged "Title IV-E Funding Fraud Conspiracy," in which plaintiffs state that the New York child protection agencies are incentivized to place children into foster care in order to receive federal funding. Id. at ¶¶ 277-317. Plaintiffs' remaining claims rest on the assertion that the individual defendants acted under the color of state law by conspiring with the Family Court to deprive plaintiffs of their rights. However, plaintiffs fail to allege facts to support their conspiracy claim.

Plaintiffs' allegations of defendants' conspiracy are "uniformly conclusory, speculative, and implausible." Butcher v. Wendt, 975 F.3d 236, 241 (2d Cir. 2020). The acts plaintiffs complain of, such as "retaliatory orders" restricting "even electronic communication" with their daughter,

ECF No. 29 ¶ 374; defendants requiring plaintiffs to follow the advice of a court-appointed pediatrician; and placement of plaintiffs' daughter in kinship foster care, do not, without more, establish a conspiracy to violate plaintiffs' rights. See also Id. at ¶ 142 ("the order for Plaintiffs to send H.K. to summer camp was in continuance of the conspiracy to alienate H.K. from her parents"). Instead, plaintiffs rely on purely conclusory assertions that defendants accepted bribes and committed fraud. See e.g., Id. at ¶ 254 ("Upon information and belief, OHEL accepted large bribes to facilitate the removal of H.K. from her parents' home…"). This is plainly insufficient. See McKnight, 699 F. Supp. 2d at 531.

Plaintiffs also allege claims under 42 U.S.C. §1985 and RICO with the same factual basis. To state a claim under §1985, "a plaintiff must allege: (1) a conspiracy, (2) an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to a person, including injury to property, person, or constitutional right." Bhatia, 347 F. App'x at 665. To state a claim of a substantive RICO violation under § 1962(c), a plaintiff must allege, among other things, two or more predicate acts constituting a pattern of racketeering activity. Those predicate acts must be the "proximate cause" of the alleged injury. To state a claim for RICO conspiracy under § 1962(d), the plaintiff must also "allege the existence of an agreement to violate RICO's substantive provisions." Butcher, 975 F.3d at 241.

Like their allegations under §1983, plaintiffs' allegations under §1985 and RICO fail to state a claim. As plaintiffs fail to sufficiently allege a conspiracy, their §1985 claim fails to meet the first element. Similarly, plaintiffs' allegations of a corrupt agreement between defendants rest only on speculation and are inadequate to support a RICO claim. See Butcher, 975 F.3d at 241. Plaintiffs provide the Court with a great deal of information regarding federal funding for child services and the state of the foster care system in the United States, ECF No. 29 ¶ 277-317.

However, plaintiffs' allegations do not plausibly support a conspiracy between the named defendants to profit from taking custody of H.K.

The Amended Complaint contains conclusory and speculative allegations regarding defendants' conspiracy. Therefore, even if the Court had subject matter jurisdiction over this matter, defendants' motions to dismiss would be granted as plaintiffs' Amended Complaint fails to state a plausible claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6).[9]

### IV. The Court Should Decline to Hear Plaintiffs' State Law Claims

Even if the Court had subject matter jurisdiction, which it does not, the Court would decline to exercise supplemental jurisdiction over plaintiffs' state law claims, as all of plaintiffs' federal claims would be dismissed. Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); see Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims").

---

[9] Plaintiffs' Amended Complaint likewise fails to state a claim against the individual defendants on a number of separate grounds. ACS is not a jural entity, and claims against it should be brought against the City of New York. N.Y. City Charter ch. 17, § 396. Plaintiffs fail to state a cognizable claim against the City under Monell, 436 U.S. at 691. Defendant Katz is immune from suit for prosecuting child protective orders. Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). Claims against defendants Katz, Hansell, Bobker, and the Steinbergs fail because plaintiffs do not allege their personal involvement in the deprivation of plaintiffs' rights. Darby v. Greenman, 14 F.4th 124, 130 (2d Cir. 2021). Plaintiffs' §1983 and 1985 claims against Dr. Stein, who was H.K.'s pediatrician until July 2017, are time barred by the three-year statute of limitations. 42 U.S.C. §1983; 42 U.S.C. §1985; Owens v. Okure, 488 U.S. 235 (1989); Wilson v. Garcia, 471 U.S. 261 (1985). Dr. Stein is also immune from suit for reporting abuse under N.Y. Soc. Serv. Law § 419.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motions to dismiss plaintiffs' Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should be granted.[10]

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: June 8, 2022
        Brooklyn, New York

---

[10] Plaintiffs have already been afforded the opportunity to amend their complaint. As the Court lacks subject matter jurisdiction over plaintiffs' claims, leave to amend should not be granted as any amendment would be futile. Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) ("leave to amend may properly be denied if the amendment would be 'futil[e]'") (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).